**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pasquale Venezia, ) | No. CV 07-1511-PHX-SMM |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF DECISION AND ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Bentley Motors, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Before the Court are Plaintiff Pasquale Venezia's ("Plaintiff") Motion for Summary Judgment on Liability Under the Arizona Motor Vehicle Warranties Act (Dkt. 28), and Defendant Bentley Motors, Inc.'s ("Bentley") Cross-Motion for Summary Judgment (Dkt. 36). Also before the Court is Plaintiff's Motion to Strike Supplemental Affidavit of George Blake ("Motion to Strike") (Dkt. 80). For reasons discussed below, the Court will deny all three motions.

**BACKGROUND**

On February 11, 2005, Plaintiff purchased a new 2005 Bentley Arnage ("Arnage") from Bentley's authorized dealership in Scottsdale, Arizona. (Dkt. 29, Pl.'s Statement of Facts ("PSOF") ¶ 1.) The Arnage was manufactured, warranted, and supplied by Bentley. (Id.) Plaintiff paid a total purchase price of $236,887.71. (Id.) As part of the purchase, Plaintiff received a written warranty that included three years and unlimited mileage coverage, under which the Arnage would be "free from defects in material or workmanship under normal use

1 and service." (PSOF ¶ 2.)  The warranty required that Plaintiff seek warranty repairs at an
2 authorized dealership.  (PSOF ¶ 3.)

3 Within the first three years of ownership, Plaintiff took the Arnage to the Scottsdale
4 dealership for repairs on several occasions.  (See PSOF, Ex. C.)  The parties dispute how many
5 days the Arnage was out of service by reason of repair (compare PSOF ¶ 4 with Dkt. 37, Def.'s
6 Statement of Facts ("DSOF") ¶ 4), and whether the Arnage is currently in defective condition
7 (compare PSOF ¶ 5 with DSOF ¶ 5).  The parties also dispute whether the repairs impaired the
8 value of the Arnage.  (Compare PSOF ¶ 6 with DSOF ¶ 6.)

9 On July 13, 2007, Plaintiff's counsel sent a letter requesting Bentley refund his money
10 pursuant to the Arizona Motor Vehicle Warranties Act ("Lemon Law").  (PSOF, Ex. A, Ex. 5.)
11 On August 7, 2007, Plaintiff initiated this action and asserted claims for breach of warranty
12 under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2310, and the Lemon Law, A.R.S.
13 §§ 44-1261 *et seq.*  Plaintiff seeks a refund of the purchase price paid for the Arnage,
14 diminution in value damages, and further relief.  (See Dkt. 1, Compl. ¶¶ 23-27.)

15 Currently before the Court are the parties' cross-motions for summary judgment.  (Dkts.
16 28, 36.)  Plaintiff contends summary judgment should be entered in his favor regarding liability
17 under the Lemon Law, leaving only the offset for reasonable use to be determined at trial.  (Dkt.
18 28, Pl.'s Mot. for Summ. J. 1.)  Plaintiff's motion for summary judgment relies in part on the
19 Lemon Law provision establishing a presumption that a "reasonable number of attempts" have
20 been made to correct the Arnage's defects.  See A.R.S. § 44-1264(A)(2).  Bentley responded
21 and filed a cross-motion for summary judgment.  (Dkt. 36, Def.'s Cross-Mot. for Summ. J.)
22 Bentley asserts that the Lemon Law's presumption should not apply because Plaintiff never
23 provided Bentley with direct written notification and opportunity to cure the alleged defects.
24 See A.R.S. § 44-1264(C). In the course of briefing these motions, Plaintiff objected to and filed
25 a motion to strike Bentley's supplemental affidavit of George Blake.  (Dkt. 80, Pl.'s Mot. to
26 Strike.)

27 //
28 //

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

//
//
//

**DISCUSSION**

Although the Complaint asserts claims under both the Lemon Law and the federal Magnuson-Moss Act, the parties' cross-motions for summary judgment involve only the Lemon Law. Plaintiff contends that he is entitled to summary judgment as to liability, pursuant to A.R.S. § 44-1263(A). Bentley disputes this position, and seeks summary judgment that the presumption prescribed in A.R.S. § 44-1264 does not apply because Plaintiff failed to comply with the requirements of subsection (C). For the reasons set forth below, the Court will deny both motions.

The key provisions of the Lemon Law are as follows:

> 44-1263. <u>Inability to conform motor vehicle to express warranty; replacement of vehicle or refund of monies; affirmative defenses; tax refund</u>
>
> A. If the manufacturer, its agents or its authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use and value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a new motor vehicle or accept return of the motor vehicle from the consumer and refund to the consumer the full purchase price, including all collateral charges, less a reasonable allowance for the consumer's use of the vehicle. The manufacturer shall make refunds to the consumer and lienholder, if any, as their interests appear. A reasonable allowance for use is that amount directly attributable to use by the consumer before his first written report of the nonconformity to the manufacturer, agent or dealer and during any subsequent period when the vehicle is not out of service by reason of repair.
>
> B. It is an affirmative defense to any claim under this article that either:
> 1. An alleged nonconformity does not substantially impair the use and market value of the motor vehicle.
> 2. A nonconformity is the result of abuse, neglect or unauthorized modifications or alterations of the motor vehicle.
> . . .

A.R.S. § 44-1263.

> 44-1264. <u>Reasonable number of attempts to conform motor vehicle to express warranty; presumption</u>
>
> A. It is presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties if either:
> 1. The same nonconformity has been subject to repair four or more times by the manufacturer or its agents or authorized dealers during the shorter of the express warranty term or the period of two years or twenty-four thousand miles following the date of original delivery of the motor vehicle to the consumer, whichever is earlier, but the nonconformity continues to exist.

- 4 -

2. The motor vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days during the shorter of the express warranty term or the two year period or twenty-four thousand miles, whichever is earlier.
. . .

C. The presumption prescribed in this section does not apply against a manufacturer unless the manufacturer has received prior direct written notification from or on behalf of the consumer of the alleged defect and has had an opportunity to cure the alleged defect.

A.R.S. § 44-1264.

### A. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment as to liability under A.R.S. § 44-1263(A). To paraphrase the requirements of that subsection, if defect or condition *substantially impairs* the *use and value* of vehicle to the consumer, and the manufacturer or dealer is unable to conform to warranty by repairing after *a reasonable number of attempts*, then the consumer may require the manufacturer *replace* the vehicle or accept *return and refund* the purchase price. A.R.S. § 44-1263(A) (emphasis added). It is an affirmative defense that the nonconformity does not substantially impair the use and market value. Id. at § 44-1263(B)(1). The statutory scheme indicates that the "use and value" of a vehicle involves some degree of objective measurement. A genuine issue exists as to whether the Arnage's repair history substantially impairs its value. Therefore Plaintiff's motion for summary judgment will be denied.

### 1. Subjective versus objective standard

The Court must first address whether a defect "substantially impairs the use and value" of a vehicle is determined by an objective or subjective standard. Plaintiff contends that, because the statute states "the use and value . . . to the consumer," substantial impairment of use and value is measured subjectively. (Pl.'s Mot. for Summ. J. 10-11; Dkt. 44, Pl.'s Reply 5-7.) The parties have not cited any case law interpreting this provision of the Lemon Law, and the Court's research has not revealed any. A review of cases interpreting other state's lemon laws persuades the Court that the standard is not purely subjective.

//

- 5 -

Interpreting a similar provision, the Supreme Court of Connecticut found that the statute incorporated a mixed subjective and objective standard. Gen. Motors Corp. v. Dohmann, 722 A.2d 1205, 1212-14 (Conn. 1998). The Court first noted that the phrase "to the consumer" suggested the legislature intended to incorporate a subjective component into the determination of "substantial impairment." Id. at 1212; Conn. Gen. Stat. § 42-179(d). On the other hand, language providing that "it shall be an affirmative defense . . . that an alleged nonconformity does not substantially impair such . . . value" indicated an intent to incorporate an objective component. Dohmann, 722 A.2d at 1212. This conclusion was supported by the "common sense" proposition that a purely subjective standard "would lead to absurd results by requiring manufacturers to replace vehicles that had only trivial defects." Id. at 1214.

The Court finds this reasoning persuasive, given the similarity between the Connecticut and Arizona statutes. Although the phrase "to the consumer" indicates a subjective standard, the Lemon Law also allows as an affirmative defense that an alleged nonconformity "does not substantially impair the use and market value of the motor vehicle." A.R.S. § 44-1263(B)(1). The affirmative defense indicates an objective standard, and omits the phrase "to the consumer." Therefore the Court rejects Plaintiff's contention that Bentley cannot provide evidence that the use and value of the Arnage were not substantially impaired. Accord Jolovitz v. Alfa Romeo Distrib. of N. Am., 760 A.2d 625, 628 (Me. 2000) ("A nonconformity . . . will trigger replacement or refund only if the manufacturer is unable to demonstrate objectively that the nonconformity has little effect on use, safety or value."); In re Villeneuve, 709 A.2d 1067, 1072 (Vt. 1998) ("In this case, those words [of the affirmative defense] clearly set forth an objective standard."). The Court next addresses the parties' evidence.

### 2. Evidence submitted

The evidence submitted by the parties creates a genuine issue as to whether the repairs undertaken substantially impaired the value of the Arnage, thereby precluding summary judgment. See Anderson, 477 U.S. at 248. Plaintiff submits a Vehicle Inspection Report

1  prepared by Bob Stork. (PSOF, Ex. B.) Stork's résumé includes 26 years of experience as
2  an ASE-certified Master Technician, ASE Alternative Fuel Technician, former Lemon Law
3  Arbitrator, and automotive wholesaler. (Id. at 1.) Stork inspected the Arnage, conducted a
4  road test of the Arnage, interviewed Plaintiff, and reviewed the repair orders. (Id. at 3.)
5  Stork opined that the repair history and defects reduced the value of the Arnage by 30%, in
6  addition to normal depreciation. (Id. at 6.)

7  Bentley counters this evidence with a vehicle inspection and review of repair history
8  prepared by Thomas LeClair. (DSOF, Ex. 2.) LeClair's qualifications include over 20 years
9  in the automotive industry as a technician, service manager, owner/operator, technical
10 consultant, wholesale arbitrator, pre-purchase evaluation consultant, and field manager, and
11 LeClair is currently certified as an ASE-certified Master Technician. (Id. at 2.) At the time
12 he conducted the inspection, LeClair was employed as a Regional After Sales Manager for
13 Bentley. (Id. at 6.) LeClair reviewed the Arnage's repair records, physically inspected the
14 Arnage, inspected the computer diagnostics, and conducted a road test of the Arnage. (Id. at
15 2-5.) He stated that he found no defects that substantially impair the use, value, or safety of
16 the Arnage. (Id. at 5-6.)

17 Bentley also submitted a letter from Rod Moore, Regional General Manager for
18 Bentley Motors, Inc. (DSOF, Ex. 3.) Moore reviewed the repair records and opined that the
19 repair history has not affected the Arnage's market value. (Id. at 3.) Moore also contacted
20 the Bentley dealers in the Western Region, all of whom responded that the repair history
21 would not reduce the resale value of the Arnage. (Id. at 4-9.)

22 Plaintiff seeks to strike Bentley's evidence because LeClair and Moore lack
23 impartiality and "expressly prepared their opinions to further [Bentley's] cause in this
24 litigation." (Dkt. 45, Pl.'s Resp. to Def.'s Statement of Facts 4-5.) Plaintiff asserts, without
25 explication or support, that "LeClair's report is deliberately intended to minimize the defects
26 of the automobile and their effect on its resale value." (Id. at 5.) Testimony by experts must
27 be based upon sufficient facts or data, and the product of reliable principles and methods
28 applied reliably to the facts of the case. Fed. R. Evid. 702. If LeClair's and Moore's

1 testimony is otherwise admissible under Rule 702, their testimony would not be precluded
2 simply because they have a relationship to Bentley. United States v. Chang, 207 F.3d 1169,
3 1173 (9th Cir. 2000); Hingson v. Pac. Sw. Airlines, 743 F.2d 1408, 1412 (9th Cir. 1984).

4     LeClair's opinion is based on an inspection of the Arnage, the repair records, and a
5 road test. Plaintiff asserts that LeClair does not meet the Daubert[1] requirements for expert
6 testimony, but provides no analysis as to why LeClair's opinion is invalid. Plaintiff does not
7 contend that LeClair's opinion is based on insufficient facts or data, or that LeClair did not
8 apply reliable principles and methods to the facts of the case. Indeed, LeClair's method is
9 virtually identical to the method applied by Plaintiff's expert Stork. (Compare DSOF Ex. 2
10 with PSOF Ex. B.) To the extent LeClair's relationship with Bentley suggests bias on
11 LeClair's part, any such bias goes to the weight of his testimony, not the admissibility. See
12 Chang, 207 F.3d at 1173.

13     Plaintiff's objection to LeClair's report is overruled. LeClair's report raises a genuine
14 issue as to whether the Arnage's repair history substantially impairs the value of the Arnage.
15 The Lemon Law requires that the defect substantially impair the use *and* value of the
16 vehicle. A.R.S. § 44-1263(A). Summary judgment as to liability is therefore not warranted,
17 and Plaintiff's Motion for Summary Judgment will be denied. Anderson, 477 U.S. at 248.

18     **B.  Bentley's Motion for Summary Judgment**

19     Bentley's cross-motion for summary judgment seeks a ruling that Plaintiff will not
20 receive the benefit of the legal presumption set forth in A.R.S. § 44-1264(A). (Dkt. 36,
21 Def.'s Resp. and Cross-Mot. for Summ. J. 10.) The Lemon Law allows a consumer to seek
22 a replacement vehicle or refund of the purchase price if a defect that substantially impairs
23 the use and value of the vehicle has not been repaired or corrected "after a reasonable
24 number of attempts." A.R.S. § 44-1263(A). The statutory scheme provides for a
25 presumption that a "reasonable number of attempts" have been made to remedy a defect.
26 A.R.S. § 44-1264. The presumption does not apply against a manufacturer unless the

---

28     [1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1316 (9th Cir. 1995).

- 8 -

1 manufacturer has receive prior direct written notification from or on behalf of the consumer
2 of the alleged defect and has had an opportunity to cure the alleged defect. A.R.S. § 44-
3 1264(C). Bentley seeks summary judgment that the presumption does not apply because
4 Plaintiff failed to provide notice and opportunity to cure, as required by subsection (C).

5 The parties devote much effort disputing whether Plaintiff satisfied the statutory
6 notice requirement by providing notice to Bentley's Scottsdale dealership. (E.g., Def.'s
7 Cross-Mot. for Summ. J. 10:18-12:17; Dkt. 46, Pl.'s Resp. to Def.'s Cross-Mot. 2:3-8:4;
8 Dkt. 57, Def.'s Reply 2:2-7:7.) The Court need not resolve issue, however, as the
9 undisputed evidence reveals that Plaintiff provided direct written notification to Bentley. On
10 July 13, 2007, Plaintiff's counsel sent a letter to Bentley, advising Bentley that Plaintiff had
11 retained counsel to pursue claims under state and federal law. (PSOF, Ex. A, Ex. 5, Letter
12 dated July 13, 2007.) It stated, in relevant part, "[this] letter constitutes a direct written
13 notification of the defects within our clients vehicle and of his intent to pursue a claim
14 pursuant to [the Lemon Law and Magnuson-Moss Act]." (Id. at 2.) The letter directed
15 Bentley to contact counsel to resolve the matter, and to do so by August 1, 2007; if the
16 matter was not resolved, a formal claim would be filed. (Id.) Defendant acknowledges
17 receipt of this letter, but contends that "Plaintiff has produced no *other* 'direct written
18 notification' to Bentley." (Def.'s Cross-Mot. for Summ. J. at 10:9-10 (emphasis added).)

19 Assuming that notice from Plaintiff to Bentley's local dealership would not constitute
20 direct written notification to Bentley—an issue which the Court need not resolve—Plaintiff
21 provided direct written notification by virtue of the July 13, 2007 letter. Bentley argues that
22 Plaintiff did not provide any "other" notice, but does not explain why the July 13 letter is
23 insufficient. Bentley's reply in support of its cross-motion for summary judgment entirely
24 fails to address Plaintiff's contention that the July 13 letter fulfilled the statutory
25 prerequisite. (Pl.'s Resp. at 8:19-9:4.) Bentley contends that it understood Plaintiff's
26 position to be that communications between Bentley's local dealership and Bentley met the
27 notice requirement, and supports this contention with an email from Bentley's counsel
28 confirming the same. (Def.'s Cross-Mot. for Summ. J. at 10:10-17.) This contention is of

1  no moment, as Plaintiff also contends that the July 13 letter met the notice requirement and
2  Bentley provides no argument or evidence to the contrary.  Nor does Bentley assert that the
3  timeframe set forth by the July 13 letter—that the alleged defects must be cured by August
4  1, 2007—did not provide an opportunity to cure the alleged defects.  Bentley is therefore not
5  entitled to judgment as a matter of law that the presumption should not apply, and its cross-
6  motion for summary judgment will be denied.  See Fed. R. Civ. P. 56(c).

### C.  Number of Days the Arnage Has Been Out of Service

8  Having determined that Plaintiff is not foreclosed from receiving the benefit of the
9  presumption set forth in A.R.S. § 44-1264(A), the Court now addresses whether the
10 presumption arises under the evidence presented.  Although the parties' cross-motions for
11 summary judgment do not turn on this issue, it is squarely presented by the parties'
12 memoranda.  Moreover, the Court is obligated to determine, to the extent practicable, what
13 material facts are not genuinely at issue based on the evidence and pleadings.  Fed. R. Civ.
14 P. 56(d)(1).

15 The Lemon Law requires that "a reasonable number of attempts" be made to conform
16 the motor vehicle to any applicable express warranty before a consumer may receive the
17 replacement or refund remedy.  A.R.S. § 44-1263(A).  Section 44-1264 sets forth two
18 scenarios under which a "reasonable number of attempts" will be presumed.  Plaintiff relies
19 on the second scenario, in which "[t]he motor vehicle is out of service by reason of repair for
20 a cumulative total of thirty or more calendar days during the shorter of the express warranty
21 term or the two year period or twenty-four thousand miles, whichever is earlier."  A.R.S. §
22 44-1264(A)(2).

23 Plaintiff contends that the Arnage was out of service by reason of repair for at least 76
24 days, over twice the amount of time required to raise the presumption that a reasonable
25 number of attempts were made.  (Pl.'s Mot. for Summ. J. 7:1-6.)  Plaintiff submits a
26 document entitled "Service History Summary" prepared by Bentley or its Scottsdale
27 dealership.  (PSOF, Ex. C.)  The Service History Summary was prepared on May 31, 2007,
28 and lists thirteen repair orders and the number of "days down" for each repair.  (Id.)  The

1  final repair order is dated December 21-23, 2006, and the total number of days down
2  amounts to 76 days.  (Id.)  Thus, although the Service History Summary was prepared on
3  May 31, 2007—more than two years after Plaintiff purchased the Arnage (see PSOF ¶
4  1)—the last repair listed occurred less than two years after purchase.  The Service History
5  Summary lists the Arnage's mileage on the date of the last repair as 8,861 miles.  Therefore
6  the Service History Summary indicates that the Arnage was out of service by reason of
7  repair for thirty or more calendar days during the shorter of the three-year express warranty,
8  two year period, or twenty-four thousand miles.  A.R.S. § 44-1264(A)(2).

9        For its part, Bentley submits the affidavit of George Blake.  (DSOF, Ex. 1; See also
10  Dkt. 78, Supp. Aff. of George Blake ("Blake Supp. Aff.").[2])  Blake states that he works in
11  product liaison for Volkswagen Group of America, Inc., and has reviewed the repair records
12  for vehicle servicing of the Arnage during the twenty-four months following Plaintiff's
13  purchase of the Arnage.  (Blake Supp. Aff. ¶¶ 1-2.)  In Blake's opinion, the Arnage was
14  serviced for a total of forty-two days during that period, and those forty-two days include
15  time for "customer error issues" and removing, refinishing, and replacing wood trim parts on
16  the dashboard.  (Id. at ¶¶ 5-6.)  After deducting the days attributable to customer error and
17  wood trim issues, Blake finds the Arnage was out of service by reason of repair for a total of
18  twenty-four days.  (Id. at ¶ 7.)

19        Plaintiff requested that the Court disregard the Blake Affidavit when it was initially
20  filed, and has moved to strike the Supplemental Affidavit.  (Dkt. 45, Pl.'s Resp. to Def.'s
21  Statement of Facts; Dkt. 80, Pl.'s Mot. to Strike.)  Plaintiff's initial objection to the Blake
22  Affidavit asserted two bases upon which it should be disregarded: the Blake Affidavit was
23  not based on personal knowledge; and the repair records were not attached.  (Dkt. 45 at 2-3.)
24  The Supplemental Affidavit addressed the latter basis for objection.  (See Dkt. 78, Blake
25  Supp. Aff., Ex. A.)  Plaintiff then moved to strike the Supplemental Affidavit, asserting that

26

27      [2] The Court granted Bentley leave to file a supplemental affidavit in order to comply with
28  the technical requirements of Federal Rule of Civil Procedure 56(e).  (Dkt. 77, Order dated May 23, 2008.)

- 11 -

1  Bentley "substantively amended the Blake Affidavit in an attempt to provide it with more
2  weight ant to cure its substantive admissibility problems." (Dkt. 80, Pl.'s Mot. to Strike 3:6-
3  7.) In allowing Bentley to supplement the Blake Affidavit, the Court stated that it would
4  consider Plaintiff's initial objection in deciding the motions for summary judgment. (Dkt.
5  77, Order dated May 23, 2008 at 3:3-5.)

6  Expert testimony must be based on sufficient facts or data. Fed. R. Evid. 702. The
7  facts or data upon which an expert bases an opinion may be those perceived by or made
8  known to the expert at or before the hearing. Id. at 703. Rule 703 contemplates as a basis
9  for opinion data "the presentation of data to the expert outside of court and other than by
10 [the expert's] own perception." Id., advisory committee's note. "Attention is directed to the
11 validity of the techniques employed rather than to relatively fruitless inquiries whether
12 hearsay is involved." Id. Plaintiff's assertion that the Blake Affidavit should be disregarded
13 for lack of personal knowledge and hearsay is therefore erroneous and will be rejected.
14 Plaintiff does not otherwise challenge the validity of the techniques employed by Blake.

15 The Court will also deny Plaintiff's Motion to Strike the Supplemental Blake
16 Affidavit. (Dkt. 80.) The Court granted Bentley leave to supplement the Blake Affidavit in
17 order to cure foundational issues. (Dkt. 77.) Specifically, the Court permitted Bentley to
18 attach the repair records that were initially omitted per Bentley's understanding of Local
19 Rule 7.1(d)(1), which prohibits the attachment of exhibits previously filed in a case. The
20 Supplemental Affidavit included the repair records, and further established foundation by
21 adding the following statement: "Part of my job includes reviewing and interpreting repair
22 invoices from dealers around the country to assess the amount of time a vehicle has been in
23 for repairs[.]" (Blake Supp. Aff. ¶ 1.) Contrary to Plaintiff's contention, this is not a
24 substantive amendment but a further clarification of the foundation of Blake's opinion—a
25 technical requirement of any affidavit. Fed. R. Civ. P. 56(e)(1). No change was made to the
26 substance of the Blake Affidavit, that substance being the number of days Blake considered
27 the Arnage to be out of service by reason of repair. (Compare DSOF Ex. 1, Blake Aff. ¶¶ 3-
28 6 with Blake Supp. Aff. ¶¶ 4-7.)

1 Plaintiff's Motion to Strike will therefore be denied.  The Supplemental Affidavit raises a genuine issue as to whether the Arnage was out of service by reason of repair for more than thirty days.  The Court therefore finds that Plaintiff is not entitled to a presumption that "a reasonable number of attempts" were made to conform the Arnage to any applicable express warranty.  A.R.S. § 44-1264.

## CONCLUSION

The Lemon Law requires that a defect substantially impair the use and value of the motor vehicle in order for liability to attach.  A.R.S. § 44-1263(A).  Plaintiff's motion for summary judgment as to liability will be denied because a genuine issue exists as to whether the Arnage's repair history substantially impaired its value.  Plaintiff complied with the statutory prerequisite of direct written notification to the manufacturer, A.R.S. § 44-1264(C), by virtue of the July 13, 2007 letter from Plaintiff's counsel to Bentley (PSOF Ex. A, Ex. 5).  Bentley's cross-motion for summary judgment that Plaintiff failed to comply with subsection (C) will therefore also be denied.  Finally, Plaintiff's Motion to Strike will be denied, as the Supplemental Affidavit contains only technical amendments permitted by the Court's Order dated May 23, 2008.  The Supplemental Affidavit raises a genuine issue as to the number of days the Arnage was out of service, and prevents the presumption of A.R.S. § 44-1264 from arising in this case.

Accordingly,

**IT IS HEREBY ORDERED** denying Plaintiff's Motion for Summary Judgment on Liability under the Arizona Motor Vehicle Warranties Act (Dkt. 28).

**IT IS FURTHER ORDERED** denying Bentley's Cross-Motion for Summary Judgment (Dkt. 36).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike Supplemental Affidavit of George Blake (Dkt. 80).

DATED this 24th day of July, 2008.

_____
Stephen M. McNamee
United States District Judge